**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARRIK MOLLEY, | No. 19-21147 (NLH)(KMW) |
| Plaintiff, | |
| v. | OPINION |
| WARDEN DAVID KELSEY, et al., | |
| Defendants. | |

APPEARANCE:

Sharrik Molley
275408
Atlantic County Jail
5060 Atlantic Ave
Mays Landing, NJ 08330

    Plaintiff Pro se


HILLMAN, District Judge

    Plaintiff Sharrik Molley, a pretrial detainee confined at Atlantic County Jail, seeks to bring a complaint pursuant to 42 U.S.C. § 1983 against Warden David Kelsey and Keefe Corporation. See ECF No. 1.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

1

For the reasons set forth below, the Court will dismiss the complaint without prejudice.

I.  BACKGROUND

Plaintiff alleges that since entering Atlantic County Jail on November 18, 2019, Defendant Kelsey, as warden of Atlantic County Jail, has: 1) deprived Plaintiff usage of the law library, 2) exposed Plaintiff to mold in the showers, and 3) charged Plaintiff an excessive "rent" of $50 monthly. See ECF No. 1. Plaintiff also alleges Keefe Corporation, with Defendant Kelsey's authorization, subjected him to price gouging. Id.

More specifically, Plaintiff asserts that when he puts in request slips to obtain case law from the law library, a civilian denies the request, identified only as "McNew," or provides material that does not relate to his case. Id. at 4. Plaintiff contends he smells mold and sees calcium, lime, and rust when using facility showers. Id. Plaintiff claims he is being charged a $50 monthly "rent," causing his "balance [to be] in the negative thousands." Id. Last, Plaintiff maintains the Keefe Corporation, who supplies the facility's canteen, has subjected him to price gouging: e.g., "$1.28 for things that cost $0.20." Id. As for his remedies, Plaintiff seeks complete access to the law library, maintenance of the showers, not being charged a monthly payment, and a reduction in prices for items

2

sold in the facility's canteen. Id. at 5. Plaintiff also seeks $4,400.00 in damages. Id.

II. STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases in which a plaintiff is proceeding in forma pauperis. The Court must sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding in forma pauperis and is incarcerated.

To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution. To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Com. of Pa., 36 F.3d 1250, 1255-6 (3d. Cir. 1994)).

1. Restriction of Access to Law Library

Plaintiff pleads his usage of the law library has been limited. See ECF No. 1. A claim alleging restrictions on access to the prison law library is considered an "access-to-the-courts" claim under the First Amendment. See Diaz v. Holder, 532 F. App'x 61, 63 (3d Cir. 2013). To allege an access-to-the-courts claim, a prisoner is required to show that the denial of access caused actual injury. Jackson v. Whalen, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting Lewis v. Casey, 518 U.S. 343, 350 (1996)). An actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. Christopher v. Harbury, 536 U.S. 403, 415 (2002).

Alleging that a prison's law library or legal assistance program is subpar in some theoretical sense is insufficient to state an actual injury. Lewis, 518 U.S. at 351.

Here, Plaintiff does not allege an actual injury in his complaint. See ECF No. 1. He does not identify any lost claim because of the pled restrictions in accessing the law library. Id. Plaintiff also does not point to any circumstance where the limiting conditions have affected him beyond mere inconvenience. Id. Therefore, Plaintiff has not sufficiently pled an "access-to-the-courts" claim under the First Amendment and the Court will dismiss the claim without prejudice. Id.

2. Shower Conditions

Next, Plaintiff appears to challenge the conditions of his confinement because of the shower conditions within the facility. See ECF No. 1. Because he is a pretrial detainee, the Due Process Clause of the Fourteenth Amendment governs the claim. Hubbard v. Taylor (Hubbard I), 399 F.3d 150, 166 (3d Cir. 2005). To state a conditions of confinement claim under the Fourteenth Amendment, Plaintiff must plead facts that suggest the conditions of his confinement amount to punishment. Bell v. Wolfish, 441 U.S. 520 (1979).

First, he must provide facts that indicate he is "incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

5

Then, he "must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk by failing to take reasonable measures to abate it." Id. Generally, this assessment, based on the totality of the circumstances, asks whether there was a purpose for the condition and whether the condition is excessive in relation to that purpose. Hubbard, 399 F.3d at 159-60. However, "the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" Bell, 441 U.S. at 537.

"Plaintiff complains of mold, lime, rust and only hot water in the showers but he has not alleged that these conditions were intended as punishment. Therefore, to state a Fourteenth Amendment Due Process violation, he must allege facts suggesting that the conditions are excessive in light of the legitimate governmental purpose of providing shower facilities for inmates, a task which inherently poses a risk of exposure to mold, lime or rust." Washington v. Kelsey, No. 20-1722, 2021 WL 41460, at *3 (D.N.J. Jan. 5, 2021). In this case, Plaintiff fails to illustrate that his conditions amount to punishment. See ECF

6

No. 1. Plaintiff's complaint fails the first prong in that it does not demonstrate a present and substantial risk of serious harm. Id. Plaintiff does not specify a particular injury, or any tangible effect from the shower condition other than its unappealing smell and presence. Id.

The complaint also fails the second prong. Id. Although it does allege Defendant Kelsey put "metal aluminum" over the mold within the shower, thereby acknowledging the condition's existence, it lacks the assertion that Defendant Kelsey was aware of any risk, let alone a substantial risk due to the mold. Id. For these reasons, Plaintiff fails to state a valid claim and the Court will dismiss this without prejudice. Id.

3. Room and Board Fees

Plaintiff maintains that the $50 monthly facility charge, which he refers to as "rent," is excessive, presumably in violation of the Excessive Fines Clause of the Eighth Amendment. See ECF No. 1. To prevail on an excessive fines claim, an inmate must show the disputed fees are both excessive and a punishment. Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 420 (3d Cir. 2000). A fine is excessive when the amount of the forfeiture does not bear some relationship to the gravity of the offense that it is designed to punish. United States v. Bajakajian, 524 U.S. 321, 334 (1998). Moreover, a fine constitutes a punishment if the "assessments and confiscations

7

can only be explained as serving in part to punish, even if they may also be understood to serve remedial purposes." Tillman, 221 F.3d at 420 (citing Austin v. United States, 509 U.S. 602, 610, 620–21 (1993)).

The Third Circuit has concluded that room and board fees are not a punishment, as they help "teach financial responsibility." Id. Moreover, room and board policies are permissible because they serve a nonpunitive function and are not contingent on an inmate's ability to pay for such services. Id. It is permissible for prison authorities to "seek reimbursement from the party receiving the benefit of care." Id. at 418-19. Further, they are not excessive because "the costs of incarceration by definition cannot be disproportionate to the offense." Id. at 416. Accordingly, Plaintiff fails to state a claim and the Court will dismiss this with prejudice. Id.

4. Supervisor Liability

Additionally, Plaintiff appears to seek liability against Defendant Kelsey in his supervisory capacity as warden of Atlantic County Jail for enabling the named conditions. See ECF No. 1. Generally, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692

(1978); Robertson v. Sichel, 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

Instead, there are ordinarily only two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). Plaintiffs may show deliberate indifference through facts that indicate "a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's," or "that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and failure of supervisory officials to respond will alone' support the finding that the two-part test is met." Beers-Capitol v. Whetzel, 256 F.3d 120, 136–37 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989)).

Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." Estate of Moore v. Cumberland Cty., No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018). Moreover, "claims alleging a failure to train, failure to discipline, or failure to supervise are a subset of . . . policy or practice liability." Womack v. Moleins, No. 10-2932, 2015 WL 420161, at *3 (D.N.J. Jan. 30, 2015).

Here, Plaintiff fails to allege adequate facts in his complaint that demonstrate Defendant Kelsey established a practice that enabled such conditions, or acquiesced to similar conditions in the past, to support a claim of deliberate indifference. See ECF No. 1. For example, Plaintiff does not contend Defendant Kelsey has currently or previously enacted a policy ensuring staff cleans facility showers less frequently. Id. Plaintiff does allege Defendant Kelsey put "metal aluminum" over the mold within the shower; however, the complaint fails to explain Defendant Kelsey was aware of any risk associated with the condition, let alone a substantial risk to meet the deliberate indifference standard. Id. Further, Plaintiff does not identify a subordinate employee that neglected to uphold conditions pursuant to current facility policy. Id.

Accordingly, Plaintiff fails to plead a valid claim of supervisory liability and the Court will dismiss the claim without prejudice. Id.

5. Price Gouging

Last, Plaintiff alleges price gouging against Defendant Keefe Corporation. See ECF No. 1. Prisoners, however, "have no federal constitutional right to purchase items from the jail commissary at any particular price, or to restrain the vendor from charging exorbitant prices." McKnight v. Taylor, No. 12-1684, 2012 WL 5880331, at *6 (D.N.J. Nov. 20, 2012); see also Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251 (3d Cir. 2001) (rejecting inmates' constitutional claims challenging a ten percent surcharge on purchases from jail commissaries in New Jersey); Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e note that we know of no constitutional right of access to a prison gift or snack shop."); French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible."). As there is no federal right at stake, the Court will dismiss this claim with prejudice.

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act] should receive leave to amend unless amendment would be inequitable or

futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). As Plaintiff may be able to allege facts that would state a federal claim, the Court will grant Plaintiff leave to amend. He may file a proposed amended complaint within 30 days of this Opinion and Order.

Plaintiff should note that when an amended complaint is filed, the complaint no longer performs any function in the case and cannot be utilized to cure defects in the complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). The amended complaint may adopt some or all of the allegations in the complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id. Plaintiff may not include any claims that have been dismissed with prejudice.

IV. CONCLUSION

For the reasons stated above, the Court shall dismiss the complaint without prejudice. 28 U.S.C. § 19153(e)(2)(B)(i)-(ii). Plaintiff may file a proposed amended complaint within 30

days of this Opinion and Order, which shall be subject to this

Court's screening under § 1915.

    An appropriate order follows.


Dated:   July 12, 2021                    s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.